# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-01533-SCT

*ESTATE OF EDWARD R. BERRY, JR., DECEASED*

*v.*

*JULIUS EARL DAHLEM*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/29/1997 |
| TRIAL JUDGE: | HON. JOHN B. TONEY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD T. LAWRENCE |
| | CHRISTOPHER B. BRADFORD |
| ATTORNEY FOR APPELLEE: | BARRY W. GILMER |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 6/17/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/8/99 |

**BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. On May 22, 1991, around 8:30 in the morning, Julius Earl Dahlem and Edward R. Berry, Jr. were involved in a two-car accident at the intersection of Ridgewood Road and County Line Road in Ridgeland, Mississippi. Dahlem was traveling north on Ridgewood Road when his Nissan Sentra was struck on the passenger side by the Cadillac Seville driven by Berry, who ran the red light at the intersection while traveling west on County Line Road. On April 30, 1993, Dahlem filed his complaint against Berry, requesting damages in the amount of $150,000 for past and future medical expenses, past and future pain and suffering, lost wages, property damage to his vehicle, and past and future mental pain and anguish. Berry died in March of 1992, of unrelated causes, and Billy V. Cooper was appointed administrator of Berry's estate. Dahlem filed his amended complaint on June 17, 1993, indicating that Cooper should receive and accept service on behalf of Berry's estate (hereinafter referred to as Berry).

¶2. The parties agreed to a judgment of liability against Berry, which was entered in an order signed by Circuit Court Judge John B. Toney on January 3, 1994. The case then proceeded to trial on the issue of damages before Judge Toney on June 17 and 18, 1996. The jury returned a verdict in favor of Dahlem in the amount of $10,800 on June 18, 1996, and Judge Toney's final judgment in that amount was entered on

June 27, 1996. On June 28, 1996, Dahlem filed his Motion for Additur, Judgment Notwithstanding the Verdict or New Trial, which Berry opposed in his July 30, 1996, response. After hearing arguments from counsel at a September 20, 1996, hearing, Judge Toney announced that he would take the matter under advisement and review the facts of the case before issuing a ruling. In his order dated August 29, 1997, Judge Toney found that the jury verdict was "inadequate as a matter of law" and granted Dahlem's motion for an additur. The court entered judgment in favor of Dahlem in the amount of $50,000, upon the condition "that in the event the Defendant fails to accept the Additur provided by this Judgment, a new trial on the issue of damages only is hereby granted."

¶3. Apparently unaware of the judgment awarding the additur, Berry filed a motion to dismiss Dahlem's complaint or to deny his motion for additur. After becoming aware of the judgment awarding the additur on October 17, 1997, Berry filed his Motion for Trial Setting or, in the Alternative, Motion to Reopen or Extend Time for Appeal, in which he stated that he did not accept the additur. Circuit Court Judge R.L. Goza denied Berry's motion for a trial setting on November 18, 1997, but allowed him fourteen days to file a notice of appeal. The trial court also denied Berry's motion to dismiss Dahlem's complaint in a November 21, 1997, order. Berry appeals to this Court, raising the following two issues:

**I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING AN ADDITUR IN THIS CASE.**

**II. WHETHER THE TRIAL COURT ERRED IN REFUSING TO GRANT BERRY A NEW TRIAL.**

¶4. We find that the trial court should have granted Berry a new trial on damages, because he did not accept the additur in this case. As a result, we reverse the trial court's judgment and remand this case to the Madison County Circuit Court for further proceedings consistent with this opinion. We therefore decline to address the merits of Berry's argument regarding the appropriateness of the additur, or its amount, under the facts of this case.

## STATEMENT OF THE FACTS

¶5. The evidence presented at trial showed that Dahlem informed the officer who responded to the scene of the accident that he was uninjured, and Dahlem was able to drive his car away from the accident scene. However, two days later, on May 24, 1991, Dahlem went to his family doctor, Dr. George Ellis, complaining of neck pain, left wrist pain, left knee pain, right hand pain, lower back tenderness, and numbness and tingling in his left leg and foot. Dr. Ellis's notes reflected that Dahlem also suffered multiple strains and contusions. Including Dr. Ellis, Dahlem sought treatment for his chronic back and neck pain from seven doctors between the accident in May of 1991, and August of 1995. Dahlem saw Dr. David Gandy, an orthopedic surgeon; Dr. Ann Myers, a rheumatologist; Dr. Donald Carpenter, a neurologist; Dr. William Warner, an orthopedic surgeon; Dr. Jeffrey Summers, an anaesthesiologist specializing in pain management; and Dr. Rahul Vohra, a rehabilitation specialist at Mississippi Methodist Rehabilitation Center.

¶6. Based in part on Dr. Ellis's notes, Dr. Warner specifically found that Dahlem's complaint of numbness in his left leg and foot indicated a stretch or compression of the L5 nerve root caused by the May 22, 1991, accident. Dr. Summers and Dr. Vohra agreed with Dr. Ellis and Dr. Warner that the L5 nerve injury was likely a result of the car accident. Dr. Warner also noted a slight straightening of the cervical curve in Dahlem's neck, indicating some muscle spasm. There was also some narrowing of the intervertebral disc

space at the C5 level, denoting degenerative wear and tear of that disc, which was not caused by the car accident, but could have been aggravated by it. Dahlem complained of tenderness in his neck and back, and he had a slightly restricted range of motion in his neck and back. Nerve testing also revealed that Dahlem had decreased sensation in the L5 dermatome of the left leg. Although physical therapy provided partial, temporary relief of Dahlem's condition, including improvement in his range of motion, Dr. Summers and Dr. Vohra anticipated that Dahlem would continue to experience discomfort as a result of his injuries indefinitely. Dr. Warner estimated that Dahlem had suffered a 5% permanent disability to the body as a whole, related to the cervical injury.

¶7. Sherry Jackson was Dahlem's physical therapist at HealthSouth while he was under treatment by Dr. Warner. Jackson's findings upon first evaluating him were that his subjective complaints of pain were not supported by the objective evaluation of his body and that a lot of his chronic problems were caused by poor posture and stiffness in his joints. She also believed that Dahlem was not very motivated. However, she stated that he followed all of the instructions given to him and in addition walked a mile a day on his own. Dr. Warner testified that Dahlem did not have poor posture, but had the normal posture for a 60-year-old man. Dr. Warner also disagreed with Jackson's depiction of Dahlem's attitude. His opinion was that Dahlem was a cooperative and motivated patient.

¶8. The total cost of the medical bills sustained by Dahlem in his treatment was $15,026.53. Despite all of the medical treatment he received, Dahlem testified that he still experienced problems with his neck, two locations on his back, and his left leg from the knee down to the ankle. He stated that the resulting pain limited his activity in that he could no longer drive long distances, do heavy yard work, exercise, hunt, camp, or fish without experiencing pain, which did not occur before the car accident. Dahlem's testimony was that he was still able to do those things as long as he kept up his physical therapy exercises, but only for shorter periods than before the accident. He also stated that the numbness in his leg continues on some days.

¶9. Berry's theory was that Dahlem's extensive medical treatments were not all reasonably necessary. However, each doctor who testified at trial stated that the expenses incurred in treating Dahlem's injuries, even years after the car accident were reasonable under the circumstances. Dr. Warner specifically testified that Dahlem was not a malingerer merely trying to run up his bills. He pointed to Dahlem's request that he be discharged for home treatment, and stated his medical opinion that Dahlem's pain and injuries were real.

¶10. Berry also maintained that at least part of the medical expenses related to the cervical injury were not caused by the car accident, but were a preexisting condition from age degeneration. He also argued that the L5 nerve root injury was not caused by the car accident, because it was not diagnosed until years later. Instead, Berry suggested that Dahlem may have injured his back hunting or fishing or camping. Berry further suggested that Dahlem's injuries were not as severe as he would have the jury believe based upon the physical therapist's testimony, and because he was still able to fish, hunt, and camp after the accident.

¶11. The jury found in favor of Dahlem in the amount of $10,800. Berry appeals to this Court from the award of the additur increasing the judgment to $50,000.

## STATEMENT OF THE LAW

¶12. Berry argues that the trial court should have ordered a new trial, because he did not accept the additur. The governing statute, § 11-1-55, reads in pertinent part, "If such additur or remittitur be not

accepted then the court may direct a new trial on damages only." Miss. Code Ann. § 11-1-55 (1991). Judge Toney's order granting the additur in this case used language mirroring the statute. It stated that "in the event the Defendant fails to accept the Additur provided by this Judgment, a new trial on the issue of damages only is hereby granted." In *Odom v. Roberts*, 606 So. 2d 114 (Miss. 1992), we outlined the defendant's options upon an award of an additur:

> Where the trial court has granted an additur, or, in the alternative, a new trial on the issues of damages only, the defendant only may elect (1) to reject the additur and have the case retried on the issue of damages only, (2) to appeal to this court on grounds the circuit court should not have granted the additur at all, or alternatively, the additur granted was legally excessive, or, (3) to accept the additur and pay the judgment. . . .

*Odom*, 606 So. 2d at 121.

¶13. Berry did not have an opportunity to choose any of the three options listed in *Odom*, because he did not receive a copy of the August 29, 1997, judgment awarding the additur until October 17, 1997. At that time, the trial court denied Berry's request for a new trial, but did allow him fourteen days to file a notice of appeal to this Court.

¶14. We have not previously addressed the effect of a defendant's silence on the award of an additur, or the amount of time that a defendant is allowed for deciding whether to accept or reject an additur. Dahlem urges this Court to adopt a new rule that failure by the defendant to reject the additur amounts to an acceptance of the additur. We reject Dahlem's position.

¶15. Of the three options outlined in *Odom*, *supra*, the only one with a designated time line is the decision to file an appeal, which must be done within thirty days of entry of the trial court's judgment. M.R.A.P. 4(a). We therefore hold that the defendant has thirty days from the date of entry of the order granting the additur to accept the additur, reject the additur and request a new trial, or file an appeal to this Court.

¶16. Based upon this new rule and a plain reading of the language in the statute and Judge Toney's judgment here, we find that the trial court erred in failing to grant a new trial in this case. Berry did not accept the additur; he attempted instead to reject it and request a new trial on damages as soon as he became aware of the order granting the additur. The statute and Judge Toney's order both indicate that, if the defendant does not accept the additur, a new trial should be granted on the sole issue of damages. When Berry did not accept the additur within the thirty-day period for filing a notice of appeal, the trial court should have ordered a new trial on the issue of damages instead of granting the additur without Berry's acceptance. We find that the denial of a new trial in this case was an abuse of discretion, and we reverse the judgment awarding the additur and the order denying a new trial on damages, and remand this case to the Madison County Circuit Court for a new trial on the sole issue of damages.

## CONCLUSION

¶17. We hereby adopt a new rule setting the time period for a defendant to exercise his option to accept an additur at thirty days from entry of the trial court's judgment awarding an additur. Given that the defendant's other options are to reject the additur and request a new trial or to file an appeal, we hold that a defendant has thirty days after entry of judgment in which to either accept the additur, reject it and proceed to a new trial on damages, or file an appeal. In a case such as this, where the defendant takes no action within those

thirty days, we find that the trial court must proceed with a new trial on damages. The trial court's judgment awarding an additur and the order denying a new trial on damages are reversed, and this case is remanded to the Madison County Circuit Court for a new trial on the sole issue of damages, because Berry did not accept the additur.

¶18. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. SMITH, J., CONCURS IN PART. COBB, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J., IN PART.**

## COBB, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶19. I concur with the result in this case and concur with the adoption of a new rule setting the time period for a defendant to exercise his option to accept an additur at thirty (30) days from entry of the trial court's judgment awarding an additur.

¶20. However, I respectfully dissent from the portion of the majority's opinion which requires the trial court to proceed with a new trial on damages when a defendant takes no action within the thirty (30) day time period. Such a rule places an unnecessary burden on the court to proceed automatically to a new trial without an affirmative request from the defendant to do so. The majority presumes that inaction by the defendant indicates the defendant's desire to retry the issue of damages, when in fact there might be other valid reasons for such inaction.

¶21. Further, from the standpoint of practicality, I would not presume that the clerk of the court will notify all attorneys of record, even though Uniform Circuit and County Court Rule 11.05 requires that "[i]mmediately upon entry of an order or judgment of the court, the clerk of court shall make a diligent effort to assure that all attorneys of record have received notice of the entry of the order." Rather, I would require the court administrator in courts that have such an official, or the court clerk, to mail a copy of the order or judgment to the attorneys of record, advising them that the defendant has thirty (30) days after the date of entry of said order or judgment in which to accept the additur, reject it and proceed to a new trial on damages, or file an appeal. This would guarantee that all interested parties were made aware of the court's ruling and allow them to respond in a timely manner.

¶22. For the foregoing reasons, I respectfully concur in part and dissent in part.

**SMITH, J., JOINS THIS OPINION IN PART.**